

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EXPRESS GOLD CASH, INC.,

                Plaintiff,

      v.

BEYOND 79, LLC, *d/b/a SellYourGold.com*,

                Defendant.

_____

**DECISION AND ORDER**

1:18-cv-00837 EAW

## INTRODUCTION

Plaintiff Express Gold Cash, Inc. ("Plaintiff") commenced the instant action on July 31, 2018, alleging claims of false advertising, deceptive business practices, unfair competition, and unjust enrichment against Defendant Beyond 79, LLC ("Defendant"). (Dkt. 1). Currently before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. 6). For the reasons set forth below, the Court grants Defendant's motion in part and denies it in part.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint. As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Defendant is a "nationwide mail-in precious metals dealer," and conducts its business via the interactive website www.sellyourgold.com. (Dkt. 1 at ¶¶ 18-19). The mail-in precious metals industry operates as follows: (1) a customer requests a free

- 1 -

appraisal kit from a dealer; (2) the dealer mails the appraisal kit to the customer, who then uses the enclosed prepaid shipping label to mail items to the dealer for appraisal; (3) the customer receives an offer for the items, which he or she can either accept or decline; and (4) if the customer declines the offer, the items are returned free of charge. (*Id.* at ¶ 26). Plaintiff and Defendant are "two of the top . . . competitors" in the mail-in precious metals industry. (*Id.* at ¶ 27).

In 2010, the Today Show, a nationally televised morning show on the NBC network, aired a segment in which it "claimed to have compared the prices offered by ten different mail-in precious metals dealers by mailing a single item of gold to each one," and further claimed that it received the highest offer from Defendant, which "offered 90% of market value." (*Id.* at ¶¶ 29-30).

"Beginning in 2011 and continuing into the present," Defendant has "published variations of an advertisement that it is 'ranked [or rated] #1 on [or by] NBC's Today Show." (*Id.* at ¶¶ 24, 32 (alterations in original)). Plaintiff alleges that this amounts to deceptive advertising, and that Defendant has:

> concealed and fabricated the original broadcast date, and exploited NBC's goodwill to convey the false impression that Defendant is currently and actually "ranked #1" by Today; that Today and NBC currently endorse, or have ever endorsed Defendant; that Today's findings were based on a comprehensive and rigorous evaluation of multiple factors rather than price offered for a single sale; that Today's findings were based on a larger than actual sample size; and Today's findings relate to all types of precious metals and jewelry—not just gold.

(*Id.* at ¶ 34). Defendant has disseminated this allegedly deceptive advertising on its website, where it has also used "the sound of three tones that are reasonably identical to

the famous three tones used by NBC to identify its broadcasting service." (*Id.* at ¶ 39).
Defendant has further displayed the allegedly deceptive advertising on its YouTube page,
in paid internet advertisements, on its social media accounts, and on consumer review
websites. (*Id.* at ¶¶ 36-46). Defendant has also used the allegedly deceptive advertising in
direct communications with customers, such as appraisal kits and emails, and in
newspapers and classified advertisements. (*Id.* at ¶¶ 48-56).

Distinct from its allegations regarding Defendant's Today Show-related advertising,
Plaintiff also alleges that Defendant's website makes misleading representations about
recently purchased items. In particular, Plaintiff alleges that "Defendant's website displays
stock photographs allegedly depicting its 'latest payouts' to customers," and that these
"stock photographs are false and misleading because they grossly exaggerate the kind,
quality and quantity of recently purchased items[.]" (Dkt. 1 at ¶¶ 57-58). The stock
photographs in question have captions stating that "photos are illustrative and depict items
of similar kind, quality and quantity to actual items purchased." (Dkt. 1-1 at 62).

Based on these allegations, Plaintiff asserts five claims against Defendant: (1) false
advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) deceptive acts and practices
under New York General Business Law § 349; (3) false advertising under New York
General Business Law § 350; (4) common law unfair competition; and (5) unjust
enrichment. (Dkt. 1 at ¶¶ 67-96).

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on July 31, 2018. (Dkt. 1). Defendant filed its motion to dismiss on September 17, 2018. (Dkt. 6). Plaintiff filed its response on October 26, 2018 (Dkt. 10), and Defendant filed its reply on November 16, 2018 (Dkt. 11).

## DISCUSSION

### I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    Timeliness of Plaintiff's Claims

As a threshold matter, Defendant argues that Plaintiff's claims are barred by the applicable statutes of limitations, or by the doctrine of laches. (*See* Dkt. 6-1 at 29-32). The Court denies the motion on these grounds, for the reasons that follow.

### A.    Lanham Act False Advertising Claim

"[T]he Lanham Act . . . contains no statute of limitations," but instead "expressly provides for defensive use of equitable principles, including laches." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n. 15 (2014) (quotation omitted); *see also Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ("[L]aches is an equitable defense, employed instead of a statutory time-bar[.]"). Nonetheless, "analogous statutes of limitation remain an important determinant in the application of a laches defense," and "determine[] which party possesses the burden of proving or rebutting the defense." *Conopco*, 95 F.3d at 191. The Second Circuit has explained:

> When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show . . . circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case.

*Id.* (quotation omitted).   However, "[b]ecause laches is an affirmative defense, a defendant asserting laches bears the ultimate burden of persuasion, even where a presumption of laches may apply." *Pecorino v. Vutec Corp.*, 6 F. Supp. 3d 217, 221 (E.D.N.Y. 2013).   The Second Circuit has held that for claims alleging unfair competition or false advertising under the Lanham Act, the analogous statute of limitations is New York State's six-year statute of limitations for fraud. *Id.* at 191-92.[1]

To prevail on a laches defense, Defendant must show that (1) Plaintiff knew of the conduct of which it complains, (2) Plaintiff inexcusably delayed in taking action against such conduct, and (3) Defendant would be prejudiced by the delay. *Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 31 (E.D.N.Y. 2009).   "[L]aches is an affirmative defense and is generally not available on a motion to dismiss." *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 364 (E.D.N.Y. 2014) (quotation omitted).   "However, in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar,

---

[1]      In a footnote in its memorandum of law, Defendant states that "[t]he Second Circuit should have adopted the three year statute of limitations applicable to Gen. Bus. Law §§ 349 and 350 and other statutory torts," and that "[t]he Court is encouraged to correct that oversight here." (Dkt. 6-1 at 29 n.3).   Arguments made only in footnotes need not be considered by the Court. *See, e.g., F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471 n.1 (S.D.N.Y. 2014) ("It is well settled . . . that a court need not consider arguments relegated to footnotes[.]"); *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 256 n.4 (S.D.N.Y. 2009) ("[B]ecause the argument is made wholly in a footnote . . ., the Court may choose to disregard it."); *cf. Diesel v. Town of Lewisboro*, 232 F.3d 92, 110 (2d Cir. 2000) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.") (internal quotation omitted).   The Court declines to reach Defendant's footnote-only contention that it should "correct" binding Second Circuit precedent regarding the appropriate statute of limitations.

a court may consider the defense on a motion to dismiss." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).

The Court is not persuaded that this is the rare case in which a laches defense can be decided at the motion to dismiss stage. Accepting as true Defendant's contention that the continuing wrong doctrine does not apply to Plaintiff's Lanham Act claim[2], it is not at all clear from the face of the Complaint that Plaintiff knew of Defendant's allegedly wrongful conduct when it began in 2011. To the contrary, many of the Complaint's allegations regarding the timing of Defendant's conduct are made on information and belief (*see, e.g.,* Dkt. 1 at ¶¶ 45-46, 49), and the specific examples of misconduct set forth in the Complaint are generally from 2015 and later (*see, e.g., id.* at ¶¶ 42, 43, 51, 54). Nowhere does the Complaint state when Plaintiff learned of Defendant's purported misconduct.

Even assuming that the face of the Complaint establishes that Plaintiff knew of the conduct of which it complains and inexcusably delayed in taking action against such conduct (which is questionable), Defendant acknowledges in its papers that it is "still required to demonstrate prejudice by a plaintiff's unreasonable delay, even after [a] presumption [of laches] applies." (Dkt. 6-1 at 29). Defendant relies on a declaration submitted by its principal, Joshua Landy, detailing its marketing expenditures to attempt to satisfy this requirement. (*See* Dkt. 6-2 (the "Landy Declaration")). However, the Court cannot consider the facts set forth in the Landy Declaration on a Rule 12(b)(6) motion. *See*

---

[2]     Pursuant to the continuing wrong doctrine, "a series of continuing wrongs may toll the period of limitations until the commission of the last wrongful act." *Bryant v. Broad. Music Inc.*, 721 F. App'x 78, 80 (2d Cir. 2018).

*e.g., Friedl v. City of N.Y*, 210 F.3d 79, 84 (2d Cir. 2000) (explaining that a district court commits reversible error if it "considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss" (alteration, quotations, and citations omitted)). Granting a motion to dismiss on the basis of a laches defense is permissible only if all the facts necessary to the defense can be found "on the face of the complaint," *Lennon*, 63 F. Supp. 2d at 439, and here, nothing on the face of the Complaint supports the conclusion that Defendant has suffered any prejudice as a result of the claimed delay in commencing suit. As such, the Court finds that dismissal of Plaintiff's Lanham Act claim on the basis of laches is not warranted. Because the Court finds dismissal unwarranted on this basis, it need not and does not consider Plaintiff's alternative argument that Defendant cannot assert a laches defense because it has unclean hands. (*See* Dkt. 10 at 27-28).

**B.    General Business Law Claims**

Defendant contends that Plaintiff's claims under New York General Business Law §§ 349 and 350 (the "General Business Law claims") are barred both by laches, and by a three-year statute of limitations. (Dkt. 6-1 at 30-31). Defendant's laches argument fails with respect to the General Business Law claims for the same reasons it fails with respect to the Lanham Act claim—namely, that even assuming the first two elements of a laches defense are satisfied, it is not apparent from the face of the Complaint that Defendant has suffered any prejudice.

With respect to the three-year statute of limitations, Defendant acknowledges that the continuing wrong doctrine may apply to the General Business Law claims, but argues

that the statute of limitations "still limits the plaintiff to recovery for acts only within the past three years." (*Id.* at 31). Plaintiff appears to concede this point in its response, stating that "application of the continuing wrong doctrine tolls the limitations period and allows ExpressGoldCash to recover damages for the previous three years. Thus, the claims survive dismissal." (Dkt. 10 at 28-29). The Court agrees with Plaintiff that, regardless of whatever limitations on recovery may ultimately be applicable, the potential applicability of the continuing wrong doctrine prevents the Court from determining, from the face of the Complaint, that Plaintiff's General Business Law claims are time-barred. Defendant's request to dismiss these claims based on the statute of limitations is denied.

### C.   Common Law Unfair Competition Claim

"[T]he period for claims of unfair competition has been treated disparately in New York." *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*, No. 04 CIV. 3136 (HB), 2005 WL 13682, at *7 (S.D.N.Y. Jan. 3, 2005). Lower New York courts have alternatively applied the six-year period for fraud claims, the three-year period for damages for injury to property, and the three-year period for actions to recover upon liability imposed by statute. *See id.* (collecting cases).

Defendant relies on a statement by the New York Court of Appeals in *De Long Corp. v. Morrison-Knudsen Co.*, 14 N.Y.2d 346, 348 (1964), that unfair competition is an "intentional tort" to argue that a one-year statute of limitation applies, and that the continuing wrong doctrine is inapplicable. (*See* Dkt. 6-1 at 31-32). However, *De Long* did not deal with the statute of limitations, and subsequent New York Court of Appeals cases have not applied a one-year statute of limitations to common law unfair competition claims.

- 9 -

*See Greenlight Capital*, 2005 WL 13682, at \*7 ("New York's high court has ruled that an unfair competition claim premised on the misappropriation and unauthorized use of a master phonographic recording was subject to a three-year statute of limitations under N.Y. C.P.L.R. § 214." (citing *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 488 (1983)). The Court is not persuaded by Defendant's argument that a one-year statute of limitations *per se* applies to Plaintiff's common law unfair competition claim. Instead, as the court in *Greenlight Capital* explained, "courts typically analyze the nature of [the] unfair competition claim to determine which statutory period applies." *Id.*

In this case, the unfair competition claim is based on Defendant's allegedly false and deceptive advertising, and is governed by a six-year statute of limitations. *See id.* at \*8 (applying six-year statute of limitations to unfair competition claim based on the same activity as Lanham Act claims); *see also Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 280 F. Supp. 2d 244, 258 (S.D.N.Y. 2003) (applying six-year fraud statute of limitations to unfair competition claim based on use of deceptive business practices). This type of fraud-based unfair competition claim accrues "at the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it." *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 260 (S.D.N.Y. 2000) (quotation omitted). In this case, the face of Plaintiff's Complaint does not establish that Plaintiff discovered the facts underlying its unfair competition claim (or should have discovered them) more than six years prior to the commencement of this action. Moreover, unfair competition claims may be subject to the continuing wrong doctrine. *See Kwan v. Schlein*, 441 F. Supp. 2d 491, 503 (S.D.N.Y. 2006) (holding that "unfair competition occurring over a period of time can give rise to

liability as a continuing tort" and that the plaintiff could recover for acts of unfair competition that had "occurred within the past six years"). Based on the record before it, the Court cannot conclude as a matter of law that Plaintiff's unfair competition claim is time-barred.

### D.   Unjust Enrichment Claim

"Under New York law, the statute of limitations applicable to an unjust enrichment claim depends on the substantive remedy the plaintiff seeks. The limitations period is six years where a plaintiff seeks an equitable remedy, but three years where a plaintiff seeks monetary damages." *Pirri v. Cheek*, No. 19 CIV. 180 (PAE), 2019 WL 2472438, at *5 (S.D.N.Y. June 13, 2019) (citations omitted); *see also Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F. Supp. 3d 285, 333 (S.D.N.Y. 2018) ("Claims for unjust enrichment under New York law are subject to a six-year period of limitations where the plaintiff seeks an equitable remedy, and a three-year period of limitations where the plaintiff seeks monetary damages."). Here, Plaintiff has sought equitable relief, in the form of an injunction, in addition to monetary damages. (*See* Dkt. 1 at 16-17). The six-year limitations period applies to Plaintiff's request for injunctive relief, while the three-year limitations period governs the request for monetary relief. *See Merine v. Prudential–Bache Utility Fund, Inc.*, 859 F. Supp. 715, 725 (S.D.N.Y.1994). An unjust enrichment claim accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (quotation omitted).

In this case, for the reasons discussed in more detail in section II.C of this Decision and Order, the Court finds that Plaintiff has not alleged a plausible unjust enrichment claim. As a result, the Court cannot assess when any such claim accrued, and cannot determine that the statute of limitations bars such a claim.

For all of the foregoing reason, the Court declines to dismiss Plaintiff's claims based on the applicable statutes of limitations and/or the doctrine of laches.

## II.     The Merits of Plaintiff's Claims

### A.     Lanham Act False Advertising Claim

The Court turns next to the merits of Plaintiff's claims, beginning with Plaintiff's claim for false advertising under the Lanham Act. "False advertising claims based on [the Lanham Act . . . contain two components. First (and obviously), a plaintiff bringing a false advertising claim must show falsity." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016). "To prevail on a false-advertising claim under . . . the Lanham Act, 'a plaintiff must show that either: 1) the challenged advertisement is literally false, or 2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers.'" *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016) (quoting *Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992)).

"The first type of claim, one for literal falsity, clearly captures falsehoods that are explicitly stated, *i.e.*, any representation that is false on its face. Importantly, however, literal falsity may also be proved by implication." *Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016) (quotations and citations omitted). An

advertisement is false by necessary implication if, "considering the advertisement in its full context, the relevant audience would recognize the false implied claim as easily as if it had been stated explicitly." *Pamlab, L.L.C. v. Macoven Pharm., LLC*, 881 F. Supp. 2d 470, 476 (S.D.N.Y. 2012).

"Alternatively, a plaintiff can show that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). In order to succeed on an implied falsity claim, a plaintiff must show that the challenged "statement, whatever its literal truth, has left an impression on the listener or viewer that conflicts with reality—a claim that invites a comparison of the impression, rather than the statement, with the truth." *Id.* (quotation and alteration omitted).

"Falsity alone does not make a false advertising claim viable." *Apotex*, 823 F.3d at 63. Instead, once falsity has been established, "the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." *Id.* (quotation omitted). This requirement is "essentially one of materiality," and means that the misrepresentation must have been "likely to influence purchasing decisions." *Id.* (quotations omitted).

Defendant argues that, on the facts set forth in the Complaint, Plaintiff can prove neither literal nor implied falsity. (Dkt. 6-1 at 13-15). Defendant further argues that Plaintiff has not plausibly alleged that the advertisements in question were misleading or confusing, or that Defendant misrepresented the inherent quality of its products or services.

(*Id.* at 15-24).  Defendant also contends that the allegedly false and deceptive statements amount to non-actionable "puffery."  (*Id.* at 24-25).

### 1.    Claims Based on Today-Show Related Advertising

Turning to Plaintiff's claims based on Defendant's Today Show-related advertising, the Court initially considers Defendant's argument that it "cannot be held liable for the Today Show's acts or omissions in crafting its news story."  (*Id.* at 14).  Defendant is correct that the Second Circuit has cautioned courts not to "permit overextension of the Lanham Act to intrude on First Amendment values," *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496 (2d Cir. 2013) (quotation omitted), and that generally a false advertising claim will not lie where the defendant has done nothing more than accurately present a study's conclusions, even if those conclusions are flawed, *see id.* However, as discussed further below, Plaintiff alleges in this case that Defendant has misstated and misrepresented the Today Show's methodology and findings, and Defendant concedes that liability may attach "where the subsequent distribution misstates the news article's conclusions."  (Dkt. 6-1 at 14-15).  Accordingly, the Court does not find that the First Amendment bars Plaintiff's Lanham Act false advertising claim in its entirety.

The Court does agree with Defendant that, standing alone, its use of the statement "ranked #1 by NBC's Today Show," or variants thereof, is not literally false, and cannot form the basis for a claim under the Lanham Act.  It is undisputed that the Today Show's 2010 investigation resulted in Defendant offering the highest payout of the tested mail-in precious metals dealers, which provides a factual basis for Defendant's statements. Defendant's subsequent representation that it was "ranked #1" by the Today Show, without

more, is neither a literally false statement nor a misrepresentation of the Today Show's conclusions.

The Court is further unpersuaded by Plaintiff's argument that Defendant "falsely uses the present tense in affirmative statements to imply that it enjoys a recent and current ranking," thereby rendering its statements false by necessary implication. (Dkt. 10 at 13). The Second Circuit's recent decision in *Board-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556 (2d Cir. 2018), is instructive. In *Board-Tech*, the Second Circuit affirmed a district court decision dismissing a Lanham Act false advertising claim pursuant to Rule 12(b)(6). *Id.* at 558. In particular, the Second Circuit held that the defendant's advertised statement that its light switches had been properly certified by "Underwriters Laboratories, Inc. ('UL'), an independent entity that tests, verifies, and endorses the safety of various electronic products," was not literally false, notwithstanding the fact that subsequent tests allegedly showed that the defendant's light switches failed to meet the certification standard. *Id.* at 558-59. The *Board-Tech* court explained that "[t]he UL 20 mark on a product's label or advertisement signifies only that the product has been (and continues to be) certified by UL," and that there was no allegation in the complaint that "UL has . . . found that the light switches are no longer compliant, or that the products have materially changed since UL's last battery of tests." *Id.* at 559. Similarly, in this case, there is no dispute that Defendant was rated first by the Today Show in 2010, and there is no allegation that the Today Show has ever withdrawn or revisited that conclusion, nor is there any allegation that Defendant has materially changed its business operations since the Today Show performed its investigation. In other words, unless and until the Today Show updates

its assessment of mail-in precious metals dealers, Defendant's statement that it is ranked

first will continue to be true. And, as with the plaintiff in *Board-Tech*, "nothing stops this

plaintiff from inviting reconsideration or retesting by" the Today Show. *Id.* at 560.

For similar reasons, the Court rejects Plaintiff's arguments that the "ranked #1"

language (and the accompanying use of NBC's name and logo) is nonetheless likely to

mislead customers. Contrary to Plaintiff's arguments, the Court is not prevented from

reaching this issue on a motion to dismiss. *See id.* at 560-61 (finding dismissal appropriate

because "the Complaint offers no non-conclusory allegations or facts to support the claim

that consumers have been misled or confused"). Here, while Plaintiff argues in opposition

to the motion to dismiss that the "ranked # 1" language is likely to mislead consumers for

various reasons (*see* Dkt. 10 at 15-16), the Complaint contains not a single fact to support

such a conclusion. Instead, the Complaint contains the conclusory allegation that "[u]pon

information and belief, based on online customer reviews, Defendant has lured consumers

into sending their items by publishing the Today Segment and the Deceptive Advertising."

(Dkt. 1 at ¶ 60)[3]. Plaintiff has provided no information whatsoever regarding these

purported "online customer reviews," nor has it explained how they support the conclusion

---

[3]      In assessing the plausibility of a complaint, it is generally permissible to consider
allegations made "on information and belief" if they concern facts "peculiarly within the
possession and control of the defendant, or where the belief is based on factual information
that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d
110, 120 (2d Cir. 2010) (internal citation omitted). Here, Plaintiff's allegations regarding
consumer confusion satisfy neither of these requirements, yet are made only "on
information and belief." This is another reason why Plaintiff's claim that the "ranked # 1"
language is likely to mislead fails. *See Citizens United v. Schneiderman*, 882 F.3d 374,
384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front
of a conclusory allegation and thereby render it non-conclusory.").

that the "ranked #1" language has misled or confused consumers. This failure is fatal to Plaintiff's allegation that the "ranked #1" language is actionable despite being literally true. *See, e.g., Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) ("At the pleading stage, the plaintiff must allege that consumers or retailers were misled or confused by the challenged advertisement and offer facts to support that claim." (quotation omitted)).

For these reasons, the Court finds that the "ranked #1" language in and of itself does not support a false advertising claim. However, the Complaint contains allegations of literal falsity beyond the use of the "ranked #1" language. For example, Plaintiff alleges that Defendant has falsified the broadcast date of the Today Show segment at issue, and has substantiated that allegation with a printout from Defendant's website which states that the segment was broadcast on August 25, 2015. (*See* Dkt. 1 at ¶ 34; Dkt. 1-1 at 21). Plaintiff further alleges that Defendant has misstated the Today Show segment's findings and methodologies, and has substantiated that allegation with screenshots of a video description posted by Defendant on YouTube, stating that the Today Show "investigated dozens of Cash for Gold companies" and found that Defendant offered the highest payouts, as well as letters to customers stating that the Today Show "found that Sell Your Gold offered the highest payout of any competitor." (*See* Dkt 1 at ¶¶ 32, 34; Dkt. 1-1 at 26-27, 51). On the record before the Court, it is plausible that these statements are literally false— the Today Show segment was broadcast in 2010 (not 2015), and tested only 10 competitors (not "dozens" and not every competitor) in the mail-in precious metals industry.

The Court further finds, contrary to Defendant's arguments, that these statements are plausibly material, as required to state a Lanham Act false advertising claim. "[M]ateriality is generally a question of fact poorly suited to a determination at the pleadings stage." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015) (quotation omitted). The Court cannot say, as a matter of law, that a reasonable consumer would not be influenced by the claim that Defendant offered the highest price of any competitor, or of "dozens" of competitors. Similarly, a reasonable consumer could find it material whether Defendant had been found to offer the highest payouts in 2010 or 2015, because a reasonable consumer could conclude that a more recent ranking is more likely to be representative of the current status of Defendant's services. *See Conopco Inc. v. Wells Enterprises, Inc.*, No. 14 CIV. 2223 NRB, 2015 WL 2330115, at *5 (S.D.N.Y. May 14, 2015) (denying motion to dismiss false advertising claim and finding it plausible that use of the phrase "original" was material, because "such a claim to originality could sway a consumer").

Defendant argues that it had no "duty to warn" consumers regarding the air date of the Today Show segment. (Dkt. 6-1 at 22-23). This argument misses the point. Plaintiff has not alleged only that Defendant omitted the air date of the segment, but that Defendant affirmatively misrepresented the air date, claiming that it was in 2015 rather than 2010. As previously discussed, the Court finds that this misrepresentation could plausibly have impacted a reasonable consumer's decision as to which mail-in precious metals dealer to use.

Finally, the specific literally false claims identified in the Complaint do not amount to mere puffery. The Second Circuit has recognized two kinds of puffery in the context of false advertising claims: "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion"; and "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Time Warner Cable*, 497 F. 3d at 159 (quotations omitted). Defendant's alleged misstatement of the air date of the Today Show segment, as well as its methodology and findings, does not fall into either of these categories.

For all these reasons, the Court concludes that Plaintiff's Lanham Act false advertising claim, as based on the Today Show-related advertising, is sufficiently pled to survive a motion to dismiss. In particular, the Court finds that Plaintiff has alleged specific, literally false statements in said advertising and has further plausibly alleged that those specific, literally false statements are material.

## 2.    Claims Based on "Latest Payout" Photos

The Court next considers whether Plaintiff has stated a plausible false advertising claim with respect to the "latest payouts" photos featured on Defendant's website, and concludes that it has not, for the reasons that follow.

As previously noted, Defendant's website features stock photographs of jewelry and coins labeled "latest payouts," with accompanying dollar amounts. (*See* Dkt. 1-1 at 62). These stock photographs have captions stating that they are "illustrative," and "depict items of similar kind, quality and quantity to actual items purchased." (*Id.*). Plaintiff claims that

this is false advertising because the stock photographs in fact "grossly exaggerate the kind, quality and quantity of recently purchased items." (Dkt. 1 at ¶ 58).

The Court agrees with Defendant that Plaintiff's false advertising claim based on the "latest payouts" photographs is not plausibly alleged. Plaintiff's Complaint contains no facts whatsoever regarding the actual kind, quality, or quantity of items that have recently been purchased by Defendant, and therefore provides no basis to conclude that the "latest payouts" stock photographs are either literally false or likely to mislead consumers. Plaintiff cannot state a false advertising claim by picking a statement from Defendant's website and alleging, with no factual support, that it is untrue. *See Iqbal*, 556 U.S. at 678 (explaining that a claim consisting of "naked assertions devoid of further factual enhancement" is not plausible) (alteration and quotation omitted). Accordingly, the Court grants, without prejudice, Defendant's motion to dismiss Plaintiff's Lanham Act false advertising claim to the extent it is based on the "latest payouts" stock photographs.

**B.    General Business Law Claims and Unfair Competition Claims**

"The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law." *Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997). There is one exception to this rule, which is that a common law unfair competition claim also requires an allegation of bad faith. *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 335-36 (E.D.N.Y. 2014) ("[A] common law unfair competition claim under New York law is identical to a Lanham Act claim, save for the additional

requirement that plaintiff show defendant's bad faith." (quotation omitted)). "Bad faith" generally refers to an intent by the defendant to cause confusion. *See KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 368 (S.D.N.Y. 2014).

Here, the Court finds that Plaintiff has plausibly alleged that Defendant acted in bad faith. In particular, Plaintiff has alleged that Defendant knowingly made false statements about the quality of its services, with the intent to "induce consumers and divert business from its competitors." (Dkt. 1 at ¶ 35). At this stage of the proceedings, the Court finds this allegation sufficient to satisfy the bad faith requirement of a common law unfair competition claim.

With respect to all other elements of Plaintiff's common law unfair competition and General Business Law claims, the Court's analysis is identical to its analysis of Plaintiff's Lanham Act claim. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's unfair competition claim and General Business Law claims without prejudice to the extent they are based on the "latest payouts" stock photographs, but otherwise denies Defendant's request to dismiss these claims.

## C.   Unjust Enrichment Claim

Defendant makes two arguments in support of its argument that Plaintiff has not stated an unjust enrichment claim: (1) Defendant contends that the unjust enrichment claim is duplicative; and (2) Defendant contends that Plaintiff has not plausibly alleged that Defendant benefited at Plaintiff's expense. (Dkt. 6-1 at 28). The Court agrees with the latter of these arguments.

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). "A plaintiff's allegation that a defendant received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Schatzki v. Weiser Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 252 (S.D.N.Y. 2014), *aff'd sub nom. BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC*, 623 F. App'x 7 (2d Cir. 2015). In other words, to state a plausible unjust enrichment claim, Plaintiff must allege that its own sales were diverted as a result of Defendant's alleged misconduct, such that Plaintiff is entitled to recover. *See George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992). Here, while Plaintiff has made a conclusory allegation that Defendant's claimed misdeeds have resulted in Defendant gaining revenues "at the expense of its competitors, including [Plaintiff]" (Dkt. 1 at ¶ 95), it has failed to allege any facts from which a fact-finder could conclude that, but for Defendant's deceptive conduct, consumers would have done business with Plaintiff. In other words, while Defendant may have been wrongfully enriched, Plaintiff has not plausibly alleged that such enrichment occurred at its expense (as opposed to the expense of non-parties such as selling customers). The Court accordingly finds Plaintiff's unjust enrichment claim subject to dismissal, without prejudice.

## III.  Leave to Amend

Plaintiff's memorandum of law concludes with the following sentence: "In the alternative, should the Court dismiss any of the causes of action, [Plaintiff] requests leave

to amend its Complaint." (Dkt. 10 at 31). This "request is not a proper motion for leave to amend, and fails to comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014) (explaining that, among other things, the Court's Local Rules require the party seeking to amend a pleading to "identify the proposed amendments through the use of a word processing red-line function or other similar markings" (quotations omitted)). The Court therefore exercises its discretion to deny this "cursory or boilerplate request[] . . ., made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009). However, the Court will make its dismissal of Plaintiff's claims without prejudice to the filing of a properly supported, procedurally compliant motion.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion to dismiss. (Dkt. 6). Specifically, the Court dismisses without prejudice Plaintiff's unjust enrichment claim in its entirety. The Court further dismisses without prejudice Plaintiff's Lanham Act false advertising claim, New York General Business Law §§ 349 and 350 claims, and common law unfair competition claim to the extent they are based on the "latest payouts" stock photographs found on Defendant's website. The Court denies Plaintiff's boilerplate request for leave to amend, without prejudice to the filing of a properly supported, procedurally compliant motion. Defendant's motion is otherwise denied.

- 23 -

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 13, 2019
       Rochester, New York